## Case No. 9,303.

### The MAUD WEBSTER.

[1 Hask. 325.] 1

District Court, D. Maine. Feb., 1871.

COLLISION—DRIFTING—STRICT WATCH — MANAGEMENT DIFFICULT—RIGHT OF WAY—BOTH IN FAULT—DAMAGES.

1. A vessel on the port tack, drifting with the current, and hardly moving ahead so as to be controlled by her helm, is in fault for colliding with a vessel on the starboard tack that could have avoided her, if the vessel first named could have prevented the collision by strict watch, and by either going about or by taking inboard her boom so as to go clear.

2. A vessel on the starboard tack, approaching a vessel on the port tack controlled by circumstances that rendered her management difficult, is in fault for colliding with her, when the collision might have been avoided by proper exertions in the management of the first named vessel although she had the right of way.

3. When both vessels are in fault and contribute to the collision, the damages should be equally divided between them.

In admiralty. Libel in rem promoted in behalf of the owners of a smack, sailing upon the starboard tack, against a schooner on the port tack, lumber laden, drifting, and hardly

1 [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

moving so as to be controlled by her helm, for damages from collision. The cause was heard on libel, claim, answer and proofs.

Thomas B. Reed, for libellant.
W. C. Crosby, for respondents.

FOX, District Judge. The libellant is the owner and master of the fishing smack Matilda of the burthen of thirty-two tons, and claims in his libel damages to the amount of $180 from an alleged collision between the two vessels near Sheep Island in the Penobscot Bay, about 6 a. m., May 16, 1870. The smack was light, on a return voyage from Boston to Rockport, and the evening previous came to anchor below the Cow buoy, on Sheep Island bar, the libellant alleging she was well in towards the westerly side of the island. The Maud Webster is a large schooner, was loaded with lumber and bound from Bangor to a port in Connecticut. She came to anchor the evening before outside of Owl's Head, and the next morning between four and five got under way in company with the schooner A. B. Russell of Portland, Conn., Mr. Gaffey, master, also lumber loaded, and bound outwards. The tide was just turned to flood, as is admitted by both sides. It is alleged in the libel, the wind was N. E. by E., and that the collision was caused by the schooner running into the smack when getting under way. The answer states the wind as E. S. E., and under all the circumstances it is important to determine which of these statements as to the course of the wind is correct. The libellant and one of his hands support the averment in the libel, whilst the master, mate and one of the crew of the schooner state the wind as is alleged in the answer, and this statement is sustained by the testimony of the master of the A. B. Russell, who preceded the schooner in working out from Owl's Head, and was but one-fourth of a mile distant from the vessels at the time of the collision. He states, "The wind was E. S. E., quite light under Munroe Island. That both vessels got under way about the same time, but that his went ahead on account of the Maud Webster not being in good trim. That there was not wind enough to give their vessels steerage way opposite Munroe Island. That the Maud Webster was taken by the current across Muscle Ridge channel and quite near to Sheep Island bar and the Cow buoy, notwithstanding they endeavored to pay her off all they could, by shoving out the main-boom as far as possible to leeward." If the wind had been N. E. by E., or from that quarter, these vessels would not have taken the course they did and drifted over near to the island on the east side of the channel, but would have had a fair wind down the channel. I am satisfied therefore from this circumstance that the wind was not as is alleged in the libel, but was about E. S. E. as given in the answer, and as it is sworn to have been by three persons on

board the schooner and the master of the A. B. Russell, in contradiction of two only from the smack.

The libel alleges that "the smack was anchored to the southward and eastward of the Cow buoy, close into Sheep Island, out of the channel and track of vessels, and that while getting under way, before the jib could be got into position to pay her off, the Maud Webster passed the Cow buoy, then hauled to, attempted to and finally did pass to windward of the Matilda and between her and Sheep Island, and there run into the Matilda, catching her jib-stay by the schooner's mainboom, which was on the starboard side, doing certain damages, &c."

The answer avers that "the Matilda had a fair wind for running up the channel, and came along with all her sails set and full, starboard tacks on board, and could easily have avoided the collision as she had the whole passage to leeward and might have kept off with proper management, but by negligence ran so near that her jib-stay caught under the schooner's main-boom, and that the collision occurred forty or fifty yards southwest of the buoy."

The libel is sustained by the two witnesses from the smack, they swearing she was not in motion, but that her anchor had broken ground and was hove in after the collision, which they swear occurred one quarter of a mile south-easterly from the buoy.

Those from the Maud Webster testify that the smack was under full sail at the rate of two and one half or three knots, and that the collision occurred a little to the southwest of the Cow buoy.

It is to be lamented that in a case of so small magnitude, there should be on almost every material fact a direct conflict between those on board the respective vessels, and I have been compelled to rely, to a great extent, on the testimony of the master of the A. B. Russell, to determine as to the real state of the case, especially when his statements are corroborated by other circumstances. He was a witness on the stand, a man of more than ordinary intelligence, I should judge, who showed he was well acquainted with the localities and had every opportunity of knowing as to the real state of the facts, and also gave his testimony without any apparent feeling or prejudice for or against either party.

With the wind as the libellant alleges, could these two vessels have come in contact in the place claimed in the libel, one-quarter of a mile south and east of the buoy? I think it is incredible that the collision took place at that point. Whilst the vessels were under the lee of Munroe and Sheep Islands, they were to a very great extent without the influence and power of the wind, as it was light, and the islands broke off its force and effect, but as Mr. Gaffey says, "after the schooners were outside of the buoy, they then began to feel the effect of the wind and

his vessel made three knots." With the wind N. N. E. it was a fair wind from the buoy to sea, the N. E. point of Ash Island, which vessels pass bound out, being S. S. W. from the buoy. The schooner therefore, with the wind N. N. E., could have laid her course directly S. S. W., and could not have gone to the eastward so as to come into collision with the smack which was lying S. E. from the buoy as is claimed by the libel, close in under the island, out of the course of vessels bound up and down the bay.

With the wind E. S. E. the schooner would have had it directly abeam, and after she had passed and had got beyond the island, the breeze was sufficient to give her steerageway and let her hold her course without drifting to the eastward as she had done when in the narrow passage above. With the wind obstructed by the islands, after the buoy was passed, the channel was much broader and the breeze of much more power, and there was no occasion for the Maud Webster to have fallen away to the eastward as is supposed.

Mr. Gaffey states, that he preceded the Maud Webster and was one-quarter to three-sixteenths of a mile ahead at the time of the collision, sailed on a course of S. S. W., after passing 100 feet westward of the buoy, and on that course passed to windward of the smack; that she was then under way, and as he passed her noticed a man throw down his handspike and take the helm, and that she had on her mainsail and jib, that they were full and drawing; that at the time of the collision the smack had gone ahead one-eighth to three-sixteenths of a mile and that the two vessels when the collision occurred were between him and the buoy, so that he could not see the buoy. The A. B. Russell, being on a course of S. S. W. from the buoy, passed to windward of the Matilda. It follows as a matter of course that the Matilda was not at anchor at the time of the collision one-quarter of a mile S. E. of the buoy, as has all along been insisted on by the libellant and his witness. The weight of the testimony as well as circumstances, about which there can be no question, establish that the collision occurred S. W. of the Cow buoy and from 200 to 300 feet distant from it; and I am satisfied that the smack was under way and at least one-eighth or one-quarter of a mile from her anchorage, notwithstanding the statement of the libellant and his witness, that she was not in motion, and her anchor had only broken ground. All the witnesses from the schooner show that the smack was sailing so fast as to break water considerably, and Mr. Gaffey agrees with them by saying that she had gone one-eighth to three-sixteenths of a mile from where he passed her, and that the lightness of the wind gave the smack the advantage.

By the 20th article of the rules established by congress in relation to navigation. it is provided that no ship shall under any circumstan-

ces neglect proper precautions "which may be required by ordinary practice of seamen, or by the special circumstances of the case." Although she was on her starboard tack, it was the duty of the smack to have used proper precaution to have prevented the collision. The courses of the two vessels at the place where the collision occurred, one sailing N. N. E. and the other S. S. W. with the wind abeam, was such that with a proper lookout and ordinary seamanship the smack could have avoided the schooner; being the lightest vessel and easiest to manage with the light breeze, she could without any difficulty have gone a very slight distance to leeward and passed by without interference. There was no one on the watch, the master was in his berth, and from his own statement "that there was quite a breeze at the time, and if the smack had been under way he could have prevented the accident," I am compelled to the conclusion that the smack was in fault, which occasioned or contributed to the accident. The least attention of those on board the smack to the position of the Maud Webster, and noticing that her mainboom was swung hard to leeward and stopped out, would have satisfied them that the schooner was not easily managed and controlled with the wind as it then was, and must have admonished them that they on their part were bound to exert themselves to prevent a collision; but instead of so conducting, nothing was done on the part of those on board the smack to avoid a collision until it had become unavoidable.

The Maud Webster was also in fault up to the time of her passing the buoy; with the light wind obstructed by the islands she appears not to have been entirely under the control of her helm. She was setting so far to the eastward across the channel, that it was found necessary to swing out the mainboom so as to throw her head off to pass by the buoy, but no necessity of this kind continued after she was beyond the buoy. The force of the wind was then more operative. She was beyond the obstruction of the island, and she had a free course from the bar to Ash Island. There was no longer any occasion for her boom being off as it had been, and if a proper, skillful watch had been on duty forward and descried the Matilda running down so close to them, he would have informed the captain seasonably, and the course of the Maud Webster should have been changed or the boom swung on board so as not to endanger the other vessel. There was no man on watch and no such precautions were taken. By the 12th article of the rules of navigation, "ships with the wind on the port side, shall (ordinarily) keep out of the way of the ship with the wind on the starboard side." The Maud Webster had the wind on her port side, and it was incumbent on her to keep out of the Matilda's way if she could. If therefore, she had it in her power by a change of course to have avoided the Matilda, she should have done it, or if by swinging on board her boom the collision would have been prevented. it should have been done. I have no doubt therefore, the collision might with proper care have been avoided by the Maud Webster, and I therefore find she also occasioned and contributed to the injuries.

The decree will be, that both vessels were in fault, and occasioned and contributed to the collision, and the damages and costs of the two vessels must be equally divided between them. Cause referred to an assessor.